Briggs Matheson (Cal. Bar No. 291287)
Jonathan C. Williams (Utah Bar No. 16194) (Pro hac vice application pending)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
bmatheson@parrbrown.com
jwilliams@parrbrown.com

*Attorneys for Plaintiffs Skylab Ventures Inc. and Welling Media, LLC*

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYLAB VENTURES INC., a Utah corporation, and WELLING MEDIA, LLC, a Delaware limited liability company,<br><br>      Plaintiffs,<br><br>vs.<br><br>WKND DIGITAL, a California corporation, and CHANDLER WELLING, an individual,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF 18 U.S.C. §§ 1836 *ET SEQ.***<br>2. **MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF CAL. CIV. CODE §§ 3426 *ET SEQ.***<br>3. **CONVERSION**<br>4. **UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)**<br>5. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>6. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>7. **UNJUST ENRICHMENT**<br>8. **BREACH OF FIDUCIARY DUTY**<br>9. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |

**DEMAND FOR JURY TRIAL**

Plaintiffs SkyLab Ventures, Inc. ("SkyLab") and Welling Media, LLC (collectively, "Plaintiffs") hereby file this Complaint against Defendants WKND Digital ("WKND") and Chandler Welling ("Chandler") (collectively, "Defendants"), and allege as follows:

## INTRODUCTION

1.      This lawsuit concerns the brazen theft of confidential, proprietary, and trade secret information from SkyLab Ventures and its wholly owned subsidiary, Welling Media, LLC, for the benefit of WKND Digital.

2.      Documentary evidence, including emails, text messages, Instagram posts, and other documents, all make clear that recently hired WKND employee Chandler Welling ("Chandler")—the former owner and CEO of Welling Media and SkyLab's former Vice President of Marketing—conspired to give WKND an unlawful advantage in the digital marketing industry by stealing Plaintiffs' confidential, proprietary, and/or trade secret information (the "Confidential Information"), as alleged herein.

3.      As SkyLab's former VP of Marketing and Welling Media's former CEO, Chandler was well positioned to carry out Defendants' theft of the Confidential Information.  In July 2020, SkyLab's founder, Jesse Silva, engaged Chandler to discuss SkyLab's interest in acquiring Welling Media.  These discussions ultimately resulted in the execution of an Asset Purchase Agreement ("APA") among the parties, pursuant to which SkyLab acquired Welling Media and its assets—including the Confidential Information—for approximately $1.5 million. After the acquisition was completed, Chandler became SkyLab's VP of Marketing and the CEO of Welling Media, SkyLab's newly acquired subsidiary.

4.      Less than a year after SkyLab acquired Welling Media, Chandler, in concert with WKND and others, devised and executed a plan to steal almost all of the assets that SkyLab had purchased through the APA, including Plaintiffs' Confidential Information consisting of their proprietary client lists, client contact information, proprietary leads on client projects, and proprietary marketing and business strategies.

5.      Defendants' theft was extensive and the stolen trade secrets concern some of the most critical facets of Plaintiffs' business.  The stolen information provides a shortcut for

WKND to developing and establishing a client base taken directly from Plaintiffs, thereby achieving through theft what Plaintiffs accomplished through their investment of significant time and money.

6.      The stolen Confidential Information—including information embodied in documents that Chandler unabashedly stole for WKND's benefit when he unlawfully removed a computer server from Plaintiffs' office, as well as downloads of Plaintiffs' data by multiple former Welling Media employees—are confidential and guarded from public disclosure.

7.      On information and belief, the stolen Confidential Information has already yielded tangible results for WKND as it seeks to compete in the rapidly growing e-commerce branding and digital marketing industry.  Cultivating a loyal client base is a costly, difficult process.  By stealing Plaintiffs' Confidential Information, Defendants have dramatically accelerated WKND's progress, providing it with an unfair advantage vis-à-vis Plaintiffs and other market participants.

8.      At the same time, Defendants have deliberately sought to cause maximum disruption to SkyLab's and Welling Media's economic relationships with their clients, by, among other things, instructing Plaintiffs' clients to pay *WKND* for services that *Plaintiffs* previously rendered.

9.      Plaintiffs have suffered and continue to suffer harm from Defendants' campaign of misappropriation and interference.  They therefore seek injunctive relief to recover and protect their confidential, proprietary and trade secret information from Defendants' further misappropriation and use, and to stop Defendants from unlawfully and unfairly competing with Plaintiffs and interfering with Plaintiffs' contractual relationships.  Plaintiffs also seek damages to compensate them for the costs, expenses, and other harms they have suffered as a result of Defendants' wrongful conduct.

\\

\\

\\

\\

## PARTIES

10.     Plaintiff SkyLab Ventures, Inc. is a cutting-edge venture-capital and marketing firm that focuses on early-stage investments in direct-to-consumer, e-commerce, and Software-as-a-Service ("Saas")-based startups.  SkyLab is, and at all relevant times has been, a corporation organized under the laws of the State of Utah with its principal place of business located in Salt Lake County, Utah.

11.     Plaintiff Welling Media, LLC is a market leader in developing and executing digital marketing strategies.  Welling Media is a wholly owned subsidiary of SkyLab.  It is, and at all relevant times has been, a limited liability company organized under the laws of the State of Delaware with its principal place of business in Franklin, Tennessee.

12.     Defendant WKND Digital is a marketing agency based in Sacramento.  WKND is a corporation organized under the laws of the State of California with its principal place of business in Sacramento, California.

13.     On information and belief, Chandler Welling is an individual residing in Brentwood, Tennessee.

14.     Plaintiffs are informed and believe, and on that basis allege, that at all times relevant to this Complaint each Defendant was the agent of the other, in that each Defendant was authorized by the other Defendant to act, and did act, as the agent of the other Defendant. Plaintiffs further allege that Defendants undertook the actions alleged herein as agents of each other in the course and scope of their agency relationship.

## JURISDICTION & VENUE

15.     Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

16.     This Court has personal jurisdiction over Defendant WKND Digital.  As alleged herein, WKND has had continuous and systematic contacts with the State of California, has purposely directed activities at the State of California, and this action arises out of and relates to those activities.  In addition, WKND's conduct, as alleged herein, occurred in California.

\\

17.     This Court has personal jurisdiction over Defendant Chandler Welling.  As alleged herein, Chandler purposely directed activities at the State of California for the benefit of his California-based employer, WKND, and this action arises out of and relates to those activities.

18.     This Court has subject matter jurisdiction of this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred within the Eastern District of California where WKND resides.

## GENERAL ALLEGATIONS

20.     Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

21.     SkyLab is an innovative venture-capital fund based in Salt Lake County, Utah. Founded in October 2020, SkyLab focuses its $30 million fund on early-stage investments in direct-to-consumer, e-commerce, and SaaS-based startups.  Through its investment fund, SkyLab works to accelerate its clients' growth and expansion, and to position them for transformative acquisition opportunities.

### SkyLab's Acquisition of Welling Media

22.     In or around October 2020, SkyLab's Co-Founders, Jesse Silva and Benson Metcalf, entered into negotiations with Chandler to acquire Welling Media, a digital marketing and customer acquisition strategy company based in Franklin, Tennessee.  At the time, Silva and Metcalf saw Welling Media as a natural partner to SkyLab, as SkyLab's investment approach included elements of digital marketing strategies.  Welling Media, for its part, had successfully generated over $1 billion in revenue for its clients through its content strategy with direct-to-consumer brands, earning millions of dollars in revenue.  Adding Welling Media to SkyLab's portfolio would give the fund—and its clients—access to a market-tested marketing engine.

\\

23.     On or around November 13, 2020, following weeks of negotiations, SkyLab and Welling Media executed an Asset Purchase Agreement ("APA" or the "Agreement") with Chandler.

24.     Pursuant to the APA, SkyLab and a new, wholly owned subsidiary, Welling Media—the "Buyer Parties" to the Agreement—agreed to purchase all of the assets of Chandler's company, WM Tennessee[1]—together with Chandler, the "Selling Parties." Under the terms of the APA, the Selling Parties agreed to sell all of WM Tennessee's assets to the Buyer Parties in exchange for $1,300,000, plus an additional $200,000 post-closing, for a total of $1.5 million.

25.     The WM Tennessee assets purchased in the APA included, but were not limited to, WM Tennessee's proprietary client lists, client contract information, client account information, equipment, computers, computer servers, electronic devices, documents, files, and goodwill relating to WM Tennessee's business and the purchased assets (collectively and as further defined in the Asset Purchase Agreement, the "Purchased Assets"). Some of the Purchased Assets that became Plaintiffs' property pursuant to the APA thereby became Plaintiffs' Confidential Information.

26.     WM Tennessee did not retain any assets by virtue of the APA.

27.     Plaintiffs, as the Buyer Parties to the APA, timely complied with their purchase obligations under the APA, thereby becoming the owner of the Purchased Assets.

### Chandler joins SkyLab as Vice President of Marketing

28.     On or around November 15, 2020, Chandler executed an employment agreement with SkyLab, pursuant to which Chandler agreed to serve as SkyLab's Vice President of Marketing. In exchange, Chandler was to receive a salary totaling $250,000, plus 5% of gross collected revenue.

29.     Two days later, on or around November 17, 2020, Chandler announced SkyLab's acquisition of Welling Media in an Instagram post. Chandler stated, among other things, that he was "now a partner in [SkyLab]," and that he would be serving as "VP of marketing." Chandler

---

[1] To avoid confusion, Plaintiffs refer to this selling entity as "WM Tennessee," as the entity was also named "Welling Media, LLC." WM Tennessee was a limited liability company organized under the laws of the State of Tennessee.

went on to announce that he would still be "leading the charge at Welling Media," and encouraged his followers to "Follow @SkyLabventures, where there is a whole lot more to come on this acquisition, BTS of operating a $50M fund, documenting the journey of investments, and more." A screenshot of Chandler's Instagram announcement is included below:



30. Over the next several months, pursuant to his employment agreement with SkyLab, Chandler served as VP of Marketing at SkyLab. In that capacity, Chandler continued to oversee operations at Welling Media, now SkyLab's wholly owned subsidiary.

\\

31.     As a result of his position as VP of Marketing at SkyLab and CEO of Welling Media, Chandler had access to Plaintiffs' confidential, proprietary, and trade secret information, including their marketing and investment strategies, proprietary client lists, and client contact information.  Chandler's access included physical access to Plaintiffs' computers, servers, files, and other property, as well as the ability to digitally access Plaintiffs' network and electronic data.

### *Defendants' Theft of Plaintiffs' Confidential Information*

32.     On information and belief, beginning in or around August 2021, Chandler began discussing with WKND Digital's CEO, Tom Patterson, a potential business partnership between Welling Media and WKND.  On September 2 and 3, 2021, Chandler and Patterson executed a Mutual Nondisclosure Agreement ("NDA") in connection with their "discussions concerning [WKND] potentially supplying services or products to Welling Media."  The stated purpose of the agreement was to "[assist] in fund raising, developing the [Welling Media's] business plans, commercial activity and/or products/services."  Chandler signed the NDA on behalf of Welling Media using the title "CEO."  Although signed in September, the NDA was given an effective date of August 12, 2021, indicating that Chandler and Patterson's discussions had been ongoing for nearly a month when they decided to execute the agreement.

33.     On or around September 26, 2021, Patterson announced WKND's "relationship" with Chandler in an Instagram post. In his post, a copy of which is reproduced below, Patterson thanked Chandler for his "incredible generosity," and opined: "The more you can help others get what they want – is the more you'll get of you want [sic].  The universe conspires to help and reward givers."

\\

\\

\\

\\

\\

\\



34.     In fact, on information and belief, in these discussions, Chandler and Patterson conspired to steal the Purchased Assets—including Plaintiffs' Confidential Information—for the benefit of WKND.  On information and belief, Chandler and WKND also recruited other individuals, including a substantial number of Welling Media employees who have since joined WKND, to participate in their scheme to misappropriate Plaintiffs' confidential, proprietary, and trade secret information.

35.     In or around September and October 2021, Defendants put their plan in motion, engaging in a series of acts, examples of which are detailed below, to unlawfully steal Plaintiffs' Confidential Information.

\\

\\

36.     On or around October 1, 2021, Chandler submitted his resignation to SkyLab. That same day, he announced in a Facebook post that he was joining WKND.  On information and belief, he currently serves as an employee of WKND.

*Lauren Scheffe Unlawfully Downloads Plaintiffs' Confidential Information*

37.     On or around September 23, 2021, then-Welling Media employee Lauren Scheffe initiated a series of twenty-four separate downloads to take—without the company's authorization or permission—a copy of Welling Media's corporate Google account, totaling twenty-four downloads and including the company's Confidential Information consisting of various contacts, emails, calendars, Google Drive data, and Google Chrome data.

38.     As an employee of Welling Media at the time, Scheffe had login credentials for, and therefore access to, the company's password-protected Google Drive account, which, on information and belief, she used to initiate the downloads.

39.     The following day, September 24, 2021, Scheffe again accessed Welling Media's computer systems to initiate another 14GB digital download from the company's project management platform (Basecamp), which contained all of Welling Media's client information, project details, and related internal company communications.

40.     Scheffe quit her employment at Welling Media on October 3, 2021.  On information and belief, she subsequently joined WKND as an employee.

41.     On information and belief, Scheffe and her colleagues at WKND are using the information she downloaded from Welling Media, including Plaintiffs' Confidential Information, to benefit her new employer.

42.     Based on Welling Media's subsequent internal investigation, Plaintiffs determined that Scheffe had attempted to cover her tracks by deleting email records from Google and Basecamp regarding these downloads.  SkyLab personnel were later able to recover the deleted emails.

43.     On information and belief, Scheffe was acting at Chandler's direction and for Chandler's and WKND's benefit when she undertook the foregoing actions.

\\

*Jenna Drake Unlawfully Emails Herself Plaintiffs' Confidential Information*

44.    On September 30, 2021, then-Welling Media employee Jenna Drake, using her Welling Media email account, emailed herself a confidential list of Welling Media's clients and their contact information, including client names, company information, and email addresses.

45.    As an employee of Welling Media at the time, Drake had login credentials for, and therefore access to, the company's password-protected accounts, including its Basecamp account, which contained all of Welling Media's client information.  On information and belief, Drake used her Welling Media credentials to access the company's systems to email herself Welling Media's proprietary client data.

46.    Based on Welling Media's subsequent investigation, the company determined that Drake had attempted to cover her tracks by deleting the email she sent to herself off of the company's server.  SkyLab personnel were later able to recover the email.

47.    Shortly after sending the email to herself, Drake quit her employment at Welling Media.  On information and belief, she subsequently joined WKND as an employee.

48.    On information and belief, Drake and her colleagues at WKND are using the Confidential Information she stole from Plaintiffs for WKND's benefit.

49.    On information and belief, Drake was acting at Chandler's direction and for Chandler's and WKND's benefit when she undertook the foregoing actions.

*Chandler Welling Diverts Client Payments from Plaintiffs to WKND and Takes Plaintiffs' Computer Server to Steal Plaintiffs' Clients*

50.    As blatant as Scheffe's and Drake's conduct was, it pales in comparison to Chandler's own efforts to steal Plaintiffs' Confidential Information and interfere with Plaintiffs' client relationships.  In or around September and October 2021, Chandler began to divert payments from Welling Media's clients to the company's competitor, WKND.  For example, on or around September 30, 2021, WKND sent an invoice to one of Welling Media's long-term clients, Keranique (d/b/a Atlantic Coast Brands), requesting payment in the amount of $8,500:

\\

\\

1
2
3
4
5
6
7
8
9
10
11
12



13    51.    On or around October 1, 2021 (the date Chandler submitted his resignation to

14  SkyLab), that same client emailed Chandler, seeking clarification as to whether the client should

15  remit payment to WKND, or to Welling Media—the entity that had recently rendered the

16  relevant services to the client, and Chandler's employer at the time the services were provided:

17

18    From: Daniel Wallock <dwallock@keranique.com>
19    Date: Fri, Oct 1, 2021 at 10:04 AM
      Subject: Fw: Invoice 1316 - 460 from WKND DIGITAL
      To: chandler welling <chandler@welling.media>
20    Cc: Cristina Torres <ctorres@keranique.com>, Peter Baltjes <pbaltjes@keranique.com>

21    Hi Chandler,

22    Happy Friday and start to Q4!

23    Please send us an email detailing for our Accounting Team what is going on with Welling Media and WKND
      and what invoices are owed to WKND and what invoices are due to Welling Media, etc details.... I want to
24    make sure we get you all paid and have all documents necessary related to payment too.

25    Thanks,
      Daniel Wallock
      Vice President of Digital Marketing
26    Profectus Beauty
      C: 805-450-3039
27    E: dwallock@keranique.com

\\

28  \\

52.     On information and belief, Chandler caused the invoice from WKND to be sent to Welling Media's client in an attempt to divert payment owed to Welling Media to WKND. On information and belief, Chandler's attempt to divert this payment was one of multiple attempts to divert payments to WKND that were, in fact, owed to Plaintiffs.

53.     Six days after Chandler resigned from SkyLab and Welling Media, on or around October 7, 2021, he entered Welling Media's offices in Franklin, Tennessee and removed the company's computer server without Plaintiffs' authorization or consent.  The server contained Plaintiffs' Confidential Information, including proprietary client lists and media assets created by Welling Media employees.  Access to the server was restricted to Plaintiffs' employees and required the use of valid username and password credentials to access the data stored therein.

54.     At the time Chandler took the server, more than a dozen of Plaintiffs' clients— including all three of SkyLab's portfolio companies—were awaiting content created by Plaintiffs and stored on the server.  As a result, SkyLab's portfolio companies were forced to find other creative marketing agencies that could help them build their needed content.  Chandler's theft of Plaintiffs' server therefore caused Plaintiffs to lose the value of their time spent creating the content for these clients, and caused Plaintiffs to suffer reputational injuries as well.

55.     Chandler admitted to taking Plaintiffs' computer server on a phone call with SkyLab Ventures on or about October 11, 2021.  During the call, Chandler informed SkyLab that he had taken a position as an employee at WKND.  He further stated that he had taken possession of Welling Media's server so that WKND would be able to service Welling Media's clients.  Chandler also indicated that he had communicated with some of Welling Media's existing clients in an effort to persuade them to leave Welling Media and to become clients of WKND.  Tellingly, Chandler also stated his belief that WKND was Welling Media's biggest competitor.

\\

\\

\\

\\

***Chandler and Other Former Welling Media Employees Announce on Instagram and Facebook That They Have "Join[ed] Forces" with WKND***

56.     On or around October 11, 2021, Chandler announced in a Facebook post that, with his "team of now 110 and a combined studio space of over 70,000 square feet, at WKND Digital we are more capable than ever before."

57.     On or around October 13, 2021, former Welling Media employee and Head of Sales, Micah Pringle, announced in an Instagram video post that "Chandler [Welling] and his entire team, that I have now jumped in with, is joining forces into the part of Tommy Patterson's crew called WKND Digital."

58.     On information and belief, many—if not all—of Welling Media's former employees are now employees of WKND.

59.     Neither Welling Media nor its owner and parent corporation, SkyLab authorized any partnership with WKND.

***Plaintiffs Scrupulously Protect their Confidential, Proprietary, and Trade Secret Information***

60.     As a fundamental part of their business, Plaintiffs have spent significant time, effort, and money to acquire, develop, and maintain relationships with clients that are key to Plaintiffs' investment and marketing business.  Plaintiffs have spent and continue to spend significant resources building and maintaining their goodwill with those clients.

61.     Plaintiffs have invested significant time, capital, and other resources into acquiring, cultivating, and maintaining their commercially valuable Confidential Information and trade secrets.  This includes developing many important business components, including, but not limited to, proprietary client lists, marketing strategies, client-acquisition strategies, brand management, partner lists, merchant lists, investment strategies, and financing strategies.

62.     Because Plaintiffs' confidential, proprietary, and trade secret information is so critical to their operations, Plaintiffs take the protection of that information seriously and have instituted safeguards to prevent its unauthorized disclosure or misappropriation. For example, Plaintiffs have implemented document control systems to protect their confidential, proprietary, and trade secret information. Plaintiffs' computer systems and electronic document repositories

are password-protected and accessible only to employees and other authorized persons who possess a company-issued username and a current password.

63.     As further protection, Plaintiffs' server—which Chandler removed from Welling Media's office as described above—could not be remotely accessed, but instead required a hard-wire connection to access any of its data.  Thus, Welling Media's employees were required to conduct certain work on-site.  To further limit access to Welling Media's data, its physical premises are locked outside of business hours and accessible after-hours only by authorized employees.  Welling Media also employs 24-hour security monitoring through Protection One – ADT.  This security system not only alerts Welling Media of any security risk, but also tracks each authorized employee's after-hours entry and exit into Welling Media's offices.

64.     Plaintiffs have taken all of these steps to prevent their current and former employees from inappropriately disclosing and misusing their confidential, proprietary, and trade secret information.  But Chandler and those acting at his behest knowingly violated and surreptitiously evaded the measures Plaintiffs have put in place, and attempted to cover their tracks to avoid being discovered.

### *The Trade Secrets at Issue*

65.     Because Plaintiffs are asserting a claim under the California Uniform Trade Secrets Act, Civil Code Section 3426, *et seq.* ("CUTSA"), Plaintiffs intend to file a statement pursuant to California Code of Civil Procedure Section 2019.210.  That statement will describe, with reasonable particularity, the trade secrets currently at issue in this action.

66.     In general, the trade secrets at issue concern the following information:

a.   Plaintiffs' proprietary client and customer lists and compilations thereof;

b.   Plaintiffs' proprietary industry knowledge;

c.   Plaintiffs' proprietary leads on client projects; and

d.   Compilations of documents regarding Plaintiffs' marketing, customer-acquisition, and investment strategies.

67.     Plaintiffs' Confidential Information is not generally known to, and is not readily ascertainable by proper means by, other persons, such as competitors who would clearly obtain

1    economic value from their disclosure or use.

2    ***Defendants Continue to Gain an Unfair and Illegal Advantage Through use of Plaintiffs'***
3    ***Confidential, Proprietary, and Trade Secret Information***

4    68.    As set forth above, WKND sought to explore a relationship with Chandler and

5    Welling Media while Chandler was still a full-time employee and VP of Market at SkyLab and

6    CEO of Welling Media.  While WKND was working to grow its business as a digital marketing

7    platform similar to Welling Media, it received critical information through Chandler and others,

8    including Plaintiffs' confidential, proprietary, and trade secret information described above.  This

9    information unquestionably gave WKND an unfair and illegal advantage, which enabled it to

10   accelerate its growth and development as a market participant.

11   69.    On information and belief, WKND is currently attempting to solicit Plaintiffs'

12   clients using the Confidential Information that WKND's employees, including Chandler,

13   recently stole.

14   70.    Plaintiffs first received notice of the allegations described herein on or about

15   October 1, 2021, upon Chandler's resignation from the companies.  Upon learning about

16   Chandler's conduct and his relationship with WKND, Plaintiffs launched an internal

17   investigation.  Plaintiffs' investigation is ongoing.

18   ***Defendants acted with oppression and malice in a willful attempt to harm Plaintiffs***

19   71.    As set forth above, Defendants acted with oppression and malice, knowingly

20   stealing, accepting, and using Plaintiffs confidential, proprietary, and trade secret information for

21   their own benefit.

22   72.    As set forth above, WKND, through its CEO Tom Patterson, had advance notice

23   that Chandler had access to Plaintiffs' Confidential Information.

24   73.    As set forth above, Chandler acted with oppression and malice, knowingly

25   misappropriating—and directing others to misappropriate—Plaintiffs' confidential, proprietary,

26   and trade secret information for his own benefit, and the benefit of his new employer, WKND.

27   74.    As set forth above, Chandler acted with oppression and malice, knowingly

28   disrupting Plaintiffs' economic relationships with their existing and potential clients, for his own

benefit and the benefit of his new employer, WKND.

75.  Plaintiffs have suffered significant economic injury as a direct and proximate result of Defendants' unlawful conduct.  Among other things, Defendants' theft of Plaintiffs' confidential, proprietary, and trade secret information, and their concerted efforts to interfere with Plaintiffs' contractual relationships with clients has damaged Plaintiffs' reputation and goodwill with their clients and customer base.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act**

**(18 U.S.C. § 1836, *et seq.*)**

**Against All Defendants**

76.  Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

77.  Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above.

78.  Plaintiffs' Confidential Information is not and was not at all relevant times hereto readily known or readily ascertainable, and Plaintiffs have taken reasonable measures to keep such information secret and confidential.

79.  This confidential, proprietary, and trade secret information relates to services sold, rendered, ordered in, performed, provided, or intended to be used, sold, rendered, ordered in, performed, or provided in interstate or foreign commerce.

80.  This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

81.  Plaintiffs' confidential information was made available to Defendant Chandler Welling during his employment with SkyLab under circumstances requiring him to maintain the information in confidence.  Defendant WKND acquired Plaintiffs' confidential, proprietary and

trade secret information from or through Chandler Welling, and knew or had reason to know that the information was acquired by improper means.

82.     Defendants misappropriated Plaintiffs' confidential, proprietary and trade secret information for their own benefit in the improper and unlawful manner alleged herein.  For example, as detailed above, Defendants misappropriated Plaintiffs' confidential, proprietary, and trade secret information by downloading and emailing themselves the confidential information, or by directing others to do so on Defendants' behalf, without Plaintiffs' consent.  Each Defendant committed acts in furtherance of their misappropriation on or after August 12, 2021.  On information and belief, Defendants remain in improper and unlawful possession of Plaintiffs' confidential, proprietary, and trade secret information.

83.     To the extent WKND did not directly misappropriate Plaintiffs' trade secrets, it conspired with Chandler Welling to commit such wrongful acts.  WKND was aware that Chandler Welling planned to misappropriate Plaintiffs' trade secrets for his or WKND's benefit, agreed with and encouraged this plan, and intended that it be carried out.

84.     To the extent WKND did not have advance notice that Chandler planned to misappropriate Plaintiffs' trade secrets for WKND's benefit, WKND joined the conspiracy when it knowingly received Plaintiffs' trade secrets from or through Chandler and others acting on his behalf and at his direction.

85.     WKND and Chandler Welling, as joint tortfeasors, are jointly and severally liable for the misappropriation of Plaintiffs' trade secrets.

86.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, Plaintiffs have suffered and, if Defendants' conduct is not enjoined, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

87.     As a further direct and proximate result of Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, Defendants have been or will be unjustly enriched in an amount to be proven at trial.

88.     Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade

secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

89.     Plaintiffs have been damaged by Defendants' misappropriation of their confidential, proprietary, and trade secret information, and are entitled to their damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

90.     Because Plaintiffs' remedy at law is inadequate, they are further entitled to preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and other legitimate business interests.

### SECOND CAUSE OF ACTION

**Misappropriation of Trade Secrets in Violation of the**

**California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, *et seq*.)**

**Against All Defendants**

91.     Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

92.     Plaintiffs own and possess certain confidential, proprietary, and trade secret information, as alleged above.

93.     Plaintiffs' confidential information is not and was not at all relevant times hereto readily known or readily ascertainable, and Plaintiffs have taken reasonable measures to keep such information secret and confidential.

94.     This confidential, proprietary, and trade secret information relates to services sold, rendered, ordered in, performed, provided, or intended to be used, sold, rendered, ordered in, performed, or provided in interstate or foreign commerce.

95.     This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

96.     Plaintiffs' confidential information was made available to Defendant Chandler Welling during his employment with SkyLab under circumstances requiring him to maintain the information in confidence.  Defendant WKND acquired Plaintiffs' confidential, proprietary and

trade secret information from or through Chandler Welling, and knew or had reason to know that the information was acquired by improper means.

97. Defendants misappropriated Plaintiffs' confidential, proprietary and trade secret information for their own benefit in the improper and unlawful manner alleged herein. On information and belief, Defendants remain in improper and unlawful possession of Plaintiffs' confidential, proprietary, and trade secret information.

98. As a direct and proximate result of Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, Plaintiffs have suffered and, if Defendants' conduct is not enjoined, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

99. As a further direct and proximate result of Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information, Defendants have been or will be unjustly enriched in an amount to be proven at trial.

100. Defendants' misappropriation of Plaintiffs' confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

101. Plaintiffs have been damaged by Defendants' misappropriation of their confidential, proprietary, and trade secret information, and are entitled to their damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

102. Because Plaintiffs' remedy at law is inadequate, they are further entitled to preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and other legitimate business interests.

### THIRD CAUSE OF ACTION

### Conversion

### Against All Defendants

103. Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

104. At all times herein mentioned, Plaintiffs were, and still are, the owners of their Confidential Information, including their trade secret information.

105.    Defendants do not have any ownership rights in any of the Confidential Information obtained by Plaintiffs upon execution of the APA, or otherwise developed or obtained while Chandler Welling was employed by Plaintiffs.

106.    Defendants each misused and misappropriated Plaintiffs' confidential, proprietary, and trade secret information, and have wrongfully converted that information by unlawfully possessing and using the information for their own benefit.  In so doing, Defendants have intentionally and substantially interfered with Plaintiffs' interests in their confidential, proprietary, and trade secret information.

107.    As a result of their conversion of Plaintiffs' confidential, proprietary, and trade secret information, Plaintiffs have suffered and, if Defendants' conduct is not enjoined, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

108.    Defendants' conversion of Plaintiffs' confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

109.    Plaintiffs have been damaged by Defendants' conversion of their confidential, proprietary, and trade secret information, and are entitled to their damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

110.    Because Plaintiffs' remedy at law is inadequate, they are further entitled to preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and other legitimate business interests.

### FOURTH CAUSE OF ACTION

**Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq*.)**

**Against All Defendants**

111.    Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

112.    As discussed above, Plaintiffs have valid and protectable rights in their confidential, proprietary, and trade secret information.

113.    Defendants knew or should have known that the misappropriation and use of Plaintiffs' confidential, proprietary, and trade secret information, without Plaintiffs' consent, is

likely to injure Plaintiffs by causing pecuniary loss and loss of goodwill.

114.    Defendants further knew or should have known that their efforts to disrupt Plaintiffs' economic relationships with their existing and prospective clients, including by directing Plaintiffs' existing clients to remit payment to WKND for services provided by Plaintiffs, is likely to injure Plaintiffs by causing pecuniary loss and loss of goodwill.

115.    As alleged herein, Defendants' wrongful misappropriation and use of Plaintiffs' confidential, proprietary, and trade secret information constitutes unlawful business practices under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., and California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.  The above-described acts and practices by Defendants also constitute deceit under Cal. Civ. Code §§ 1709-10, and are therefore wrongful and unlawful acts in violation of California Business & Professions Code § 17200.

116.    The above-described acts and practices by Defendants are unjustified, inflict injury on Plaintiffs' business, and serve no public benefit, and are therefore also unfair acts in violation of California Business & Professions Code § 17200.

117.    As a direct and proximate result of Defendants' conduct in violation of California Business & Professions Code Section 17200, Plaintiffs have suffered and, if Defendants' conduct is not enjoined, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

118.    Defendants' violations of Section 17200 were intentional, knowing, willful, malicious, fraudulent, and oppressive.

119.    Plaintiffs have been damaged by Defendants' violations of Section 17200, and are entitled to their damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

120.    Because Plaintiffs' remedy at law is inadequate, they are further entitled to preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and other legitimate business interests.

\\

\\

### FIFTH CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

### Against All Defendants

121.    Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

122.    As set forth above, SkyLab and Welling Media have current and future economic relationships with various clients and potential clients.  These current and future relationships hold ongoing and probable future economic benefits and advantages to Plaintiffs.

123.    Defendants have known of the existence of these economic relationship by virtue of Defendant Chandler Welling's employment with Plaintiffs.  Defendants have also known that, by stealing Plaintiffs' confidential, proprietary, and trade secret information, Defendants would interfere with these relationships and cause Plaintiffs to lose, in whole or in part, the ongoing and probable future economic benefits and advantages arising from these relationships.

124.    Defendants have also known that by directing Plaintiffs' clients to remit payments to WKND that were owed to Plaintiffs, as discussed above, Defendants would interfere with these relationships and cause Plaintiffs to lose, in whole or in part, the ongoing and probable future economic benefits and advantages arising from these relationships.

125.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and, if Defendants' conduct is not enjoined, will continue to suffer, irreparable injury and significant economic damages, in an amount to be proven at trial.

126.    Because Plaintiffs' remedy at law is inadequate, they are further entitled to preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and other legitimate business interests.

### SIXTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations

### Against All Defendants

127.    Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

128.    As set forth above, valid contractual relationships exist between Plaintiffs and each of their clients, as well as Plaintiffs' business and investment partners.  These existing contractual relationships hold economic benefits and advantages to Plaintiffs.

129.    Defendants have known of the existence of these contractual relationships by virtue of Chandler Welling's employment at SkyLab.

130.    The above-described acts and practices by Defendants taking, without permission or authorization, Plaintiffs' confidential, proprietary, and trade secret information, has been intentional and designed to induce a disruption or termination of Plaintiffs' valuable contractual relationships.

131.    As discussed above, Defendants have further intentionally interfered with Plaintiffs' client relationships by directing payments from Plaintiffs' current clients to WKND. Defendants know and have known that such interference would cause Plaintiffs to lose, in whole or in part, the ongoing and probable future economic benefits and advantages arising from these client relationships.

132.    On information and belief, by the above-described wrongful conduct, has intended to, and has in fact, resulted in the erosion of Plaintiffs' contractual relationships with certain clients and injury to Plaintiffs' economic benefits and advantages arising from these contractual relationships.

133.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and, if Defendants' conduct is not enjoined, will continue to suffer, irreparable injury and significant economic damages, in an amount to be proven at trial.

134.    Because Plaintiffs' remedy at law is inadequate, they are further entitled to preliminary and permanent injunctive relief to recover and protect their confidential, proprietary, and trade secret information and other legitimate business interests.

### SEVENTH CAUSE OF ACTION

**Unjust Enrichment**

**Against All Defendants**

135.    Plaintiffs repeat and incorporate by reference all prior allegations of this

Complaint as if fully set forth herein.

136.    As discussed above, Plaintiffs have valid and protectable rights in their confidential, proprietary, and trade secret information.

137.    Defendants have improperly enriched and continue to improperly enrich themselves from their misappropriation and use of Plaintiffs' confidential, proprietary, and trade secret information, as alleged herein.

138.    It would be unjust for Defendants to retain the financial proceeds and other commercial benefits and advantages they improperly received from their unlawful possession and use of Plaintiffs' confidential, proprietary, and trade secret information.

139.    Defendants' unjust enrichment, in an amount to be proven at trial, should be disgorged from them and awarded to Plaintiffs.

### EIGHTH CAUSE OF ACTION

### Breach of Fiduciary Duties

### Against Defendant Chandler Welling

140.    Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

141.    As discussed above, from approximately November 2020 until his resignation on October 1, 2021, Chandler Welling served as Vice President of Marketing at SkyLab, and as an executive officer at Welling Media, SkyLab's wholly owned subsidiary.  As an officer of both companies, Chandler owed fiduciary duties to Plaintiffs, including but not limited to duties of loyalty and to act in the best interest of Plaintiffs.

142.    As alleged above, Chandler Welling breached his fiduciary duties to Plaintiffs by, among other things, intentionally stealing Plaintiffs' confidential, proprietary, and trade secret information, including by taking Plaintiffs' computer server and other assets without authorization, and by his intentional efforts to interfere with Plaintiffs' existing and prospective economic relationships.

143.    As a direct and proximate result of Chandler Welling's breaches of his fiduciary duties, Plaintiffs have suffered significant economic damages, in an amount to be proven at trial,

and are also entitled to an award of exemplary damages and attorneys' fees.

144.    Chandler Welling's breaches of his fiduciary duties were intentional, knowing, willful, malicious, fraudulent, and oppressive.

### NINTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### Against Defendant Chandler Welling

145.    Plaintiffs repeat and incorporate by reference all prior allegations of this Complaint as if fully set forth herein.

146.    As set forth above, on or about November 15, 2020, Chandler Welling executed an employment agreement with SkyLab, pursuant to which he agreed to serve as SkyLab's Vice President of Marketing.

147.    Inherent in the employment agreement between SkyLab and Chandler is an implied covenant of good faith and fair dealing, pursuant to which SkyLab and Chandler impliedly promised each would not intentionally or purposefully do anything that would destroy or injure the other's right to receive the fruits of the agreement.

148.    Chandler breached that covenant by failing to undertake reasonable, good-faith efforts to preserve the benefits of the bargain that SkyLab made with Chandler, including by intentionally stealing Plaintiffs' confidential, proprietary, and trade secret information, and by his intentional efforts to interfere with Plaintiffs' existing and prospective economic relationships for his own and WKND's benefit, as alleged herein.

149.    As a direct and proximate result of Chandler Welling's breaches of his fiduciary duties, Plaintiffs have suffered significant economic damages, in an amount to be proven at trial, and are also entitled to an award of exemplary damages and attorneys' fees.

\\

\\

\\

\\

\\

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully seek the following against Defendants:

A.      Judgment in favor of Plaintiffs and against Defendants on each cause of action alleged herein;

B.      All damages caused by Defendants' unlawful actions in an amount to be determined at trial, such damages to include actual loss and unjust enrichment;

C.      Exemplary and punitive damages as provided by law;

D.      Disgorgement of all proceeds Defendants have received from the misappropriation of Plaintiffs' confidential, proprietary, and/or trade secret information;

E.      Awarding Plaintiffs pre- and post-judgment interest on all damages as allowed by law;

F.      Attorneys' fees, costs, and expenses incurred by Plaintiffs in investigating this misconduct and litigating this action;

G.      Preliminary and permanent injunctive relief pursuant to which Defendants, and their employees or representatives, and all persons acting in concert or participating with them are ordered, enjoined, or restrained, directly or indirectly, by any means whatsoever, as follows:

   i.      From disclosing or using Plaintiffs' confidential, proprietary, and trade secret information;

   ii.     Immediately to preserve and return to Plaintiffs (a) all copies of all Plaintiffs' documents and information, including without limitation any trade secret and other confidential or proprietary information acquired from Plaintiffs; and (b) all copies of all materials (in paper, electronic, or any other form) containing any, or derived from, Plaintiffs' trade secrets, or other confidential or proprietary information; and

   iii.    To turn over to the Court any proceeds Defendants have received from the misappropriation of Plaintiffs' confidential, proprietary, and/or trade secret information, which proceeds would be held in constructive trust until the conclusion of this litigation;

H.      Granting Plaintiffs such other and further relief as this Court deems just and proper.

Dated: October 19, 2021.                        Respectfully submitted,

                                                PARR BROWN GEE & LOVELESS, P.C.


                                                */s/ Briggs Matheson*
                                                Briggs Matheson
                                                Jonathan C. Williams
                                                *Attorneys for Plaintiffs Skylab Ventures, Inc. and Welling Media, LLC*